UNITED STATES DISTRICT COURT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PT AURORA INDONESIA TRADING and JIN MAA
TRADING LIMITED.,

                          Plaintiffs,

          - against -

USARM GROUP, LLC,

                          Defendant.
-------------------------------------------------------------------X

Case No. 20 Civ. 07045 (ER) (JLC)

**ANSWER WITH COUNTERCLAIM AND <u>JURY TRIAL DEMAND</u>**

Defendant USARM Group LLC ("USARM") hereby provides it Answer with Counterclaim and Jury Trial Demand to the Complaint of Plaintiffs PT Aurora Indonesia Trading ("Aurora") and Jin Maa Trading Limited ("Jin Maa") (collectively, "Plaintiffs"). Any allegation admitted is admitted solely as to the specific facts alleged and not as to any conclusions or characterizations which may be contained in or implied by an allegation.

### THE PARTIES

1. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2. Denies the allegations contained in paragraph 2 of the Complaint, except admits that it is a Virginia limited liability company with its principal place of business located at 21184 Sundial Ct., Broadlands, VA, 20148.

### JURISDICTION AND VENUE

3. Paragraph 3 of the Complaint states conclusions of law for which no response is required. To the extent a response is required, USARM denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint insofar as it refers to Plaintiff, admits that it is a Virginia corporation, respectfully

refers the Court to the parties' contract for its contents, and otherwise denies the allegations contained in paragraph 3 of the Complaint

### NATURE OF ACTION

4. Denies allegations contained in paragraph 4 of the Complaint.

### FACTS

5. Denies the allegations contained in paragraph 5 of the Complaint, except admits that Aurora and USARM entered into a contract and respectfully refers the Court to the text of the contract for its content.

6. Denies the allegations contained in paragraph 6 of the Complaint, except admits and avers that, under duress, USARM agreed to a purported Addendum to the parties' contract on May 29, 2020.

7. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8. Paragraph 8 of the Complaint states conclusions of law for which no response is required. To the extent a response is required, USARM denies the allegations contained in paragraph 8 of the Complaint and respectfully refers the Court to the text of the Addendum for its content.

9. Denies allegations contained in paragraph 9 of the Complaint.

10. Denies allegations contained in paragraph 10 of the Complaint.

11. Denies allegations contained in paragraph 11 of the Complaint.

12. Denies allegations contained in paragraph 12 of the Complaint.

13. Denies allegations contained in paragraph 13 of the Complaint.

14. Denies allegations contained in paragraph 14 of the Complaint.

15. Denies the allegations contained in paragraph 15 of the Complaint, except admits that Jin Maa and USARM entered into a contract and respectfully refers the Court to the text of the contract for its content.

16. Paragraph 16 of the Complaint states conclusions of law for which no response is required. To the extent a response is required, USARM denies the allegations contained in paragraph 16 of the Complaint and respectfully refers the Court to the text of the Mask Agreement for its content.

17. Denies the allegations contained in paragraph 17 of the Complaint, except admits that Jin Maa delivered an invoice to USARM on or about April 11, 2020, and respectfully refers the Court to the text of the invoice for its content.

18. Denies the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Denies the allegations contained in paragraph 20 of the Complaint.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

21. In response to paragraph 21 of the Complaint, USARM repeats and realleges each and every admission, denial, statement and averment contained in paragraphs 1 through 20 of this answer with the same force and effect as though here set forth in full.

22. Denies the allegations contained in paragraph 22 of the Complaint.

23. Denies the allegations contained in paragraph 23 of the Complaint.

24. Denies the allegations contained in paragraph 24 of the Complaint.

25. Denies the allegations contained in paragraph 25 of the Complaint.

26. Denies the allegations contained in paragraph 26 of the Complaint.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Account Stated)

27. In response to paragraph 27 of the Complaint, USARM repeats and realleges each and every admission, denial, statement and averment contained in paragraphs 1 through 26 of this answer with the same force and effect as though here set forth in full.

28. Denies the allegations contained in paragraph 28 of the Complaint.

29. Denies the allegations contained in paragraph 29 of the Complaint.

30. Denies the allegations contained in paragraph 30 of the Complaint.

31. Denies the allegations contained in paragraph 31 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant USARM asserts the following affirmative and other defenses. In asserting its defenses, Defendant does not assume the burden of proof with respect to any issue as to which applicable law places the burden of proof upon Plaintiffs.

## FIRST DEFENSE

### FAILURE TO STATE A CLAIM

32. The Complaint fails to state a cause of action for which relief can be granted and plaintiffs' claims must be dismissed as a matter of law.

## SECOND DEFENSE

### DURESS, UNCONSCIONABILITY, ILLEGALITY, AND PUBLIC POLICY

33. Plaintiffs' contracts and addenda were procured by duress and are unconscionable, illegal, and contrary to public policy. Without limitation, Plaintiffs unfairly and unlawfully exploited Defendant's need to procure Personal Protective Equipment during the COVID-19 pandemic and engaged in unlawful price gouging, such as by forcing Defendant to sign an Addendum putatively allowing the amounts Defendant owes under the contract to be raised, under Plaintiffs' threat of withholding the critical lifesaving supplies that Plaintiffs were under a preexisting duty to provide.

### THIRD DEFENSE

### WAIVER, ESTOPPEL, CONSENT, RELIANCE, LACHES, AND ACQUIESCENCE

34. Plaintiffs knew or should have known of Defendant's actions, but Plaintiffs unreasonably delayed efforts to enforce their rights, if any, causing significant prejudice to Defendant and others (such Defendant's own purchasers) and substantial changes to their positions. Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel (whether equitable, promissory, or otherwise), consent, reliance, laches, and acquiescence.

### FOURTH DEFENSE

### SETOFF AND RECOUPMENT

35. The relief Plaintiffs seek, including damages, is limited to the extent that Defendant is entitled to set off or recoup damages, including by the damages Plaintiffs owe Defendant on account of any counterclaim.

### FIFTH DEFENSE

### FAILURE TO MITIGATE DAMAGES

36. Plaintiffs' claims and the requested relief are barred, in whole or in part, because Plaintiffs failed to mitigate, minimize, or avoid their damages, if any.

### SIXTH DEFENSE

### NO COGNIZABLE DAMAGES

37. Plaintiffs' claims and the requested relief are barred, in whole or in part, because Plaintiffs have not been damaged or harmed, and Defendant has not been benefited, by reason of any act or omission alleged against Defendant; and because the alleged injury or damage suffered by Plaintiffs is nonexistent, is speculative, lacks specificity, is not of the nature or to the extent alleged, is not recoverable for the claims asserted, or was not the foreseeable result of Defendant's alleged conduct. To the extent Defendant harmed Plaintiffs, any such harm was *de minimis* and therefore not actionable.

### SEVENTH DEFENSE

### UNENFORCEABILITY

38. Plaintiffs' purported contracts, addenda, or portions thereof, are unenforceable because they are unenforceable penalties, vague, indefinite, missing material terms, misleading, illegible, and uncertain; and because of defenses to the enforceability of them or circumstances excusing their performance, including lack of consideration, failure of consideration, frustration of purpose, impracticability, fraud in the inducement and performance, and Plaintiffs' own material breaches excusing Defendant's performance.

### EIGHTH DEFENSE

### UNCLEAN HANDS

39. Plaintiffs' claims and the requested relief are barred, in whole or in part, by the doctrine of unclean hands because Plaintiffs engaged in immoral, unconscionable, or inequitable conduct related to the subject matter of this action that injured Defendant.

### NINTH DEFENSE

### IN PARI DELICTO

40. Plaintiffs' claims are barred, in whole or in part, by the doctrine of in pari delicto because Plaintiffs have engaged in culpable wrongdoing barring it from bringing claims against Defendant.

41. USARM reserves the right to supplement and amend its affirmative defenses and to assert additional defenses, the basis for which may be revealed during discovery.

**COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 13, Defendant and Counterclaimant USARM Group, LLC ("USARM"), hereby asserts the following Counterclaim against Plaintiff and Counterclaim Defendant PT Aurora Indonesia Trading ("Aurora") and Jin Maa Trading Limited ("Jin Maa").

*Nature of Action*

1. At the initial peak of the coronavirus pandemic, USARM sought to import ten million vinyl gloves to assist hospital systems in the United States. Aurora presented itself as a supplier with a ready inventory of gloves of the necessary quality and size, private airplanes that would accommodate the extremely demanding delivery schedule of delivering these emergency supplies, and price demands that would make the contemplated transaction realistic, even profitable, for USARM. But, once the parties' agreement was signed, Aurora proved itself to be worse than unreliable—it was nothing less than exploitative.

2. Aurora turned out not to have the necessary gloves in inventory, and was unable to source them—by its own admissions, only 26% of the scheduled deliveries were made, and those were so inferior in quality and incorrect in size as to be rejected *in toto* by the end buyer. The deliveries were woefully late, since Aurora turned out not to own any planes. And, though Aurora insisted on modifying its agreement with USARM to obtain complete pre-payment, Aurora has disavowed any intention of ever performing under the parties' agreement. Instead, it has somehow found the sheer chutzpah to, along with its alter-ego Jin Maa, sue USARM for the cost of shipping non-conforming gloves to USARM under a contract procured unlawfully and through duress. Aurora seeks to vindicate its rights under the parties' agreement, including both its right to a refund of the unearned moneys it paid to Aurora and indemnification for the claims against USARM occasioned by Aurora's breach.

PARTIES

3. USARM is a Virginia limited liability company with its principal place of business located at 21184 Sundial Ct., Broadlands, VA, 20148.

4. On information and belief, Aurora is an Indonesian limited liability company with its principal place of business located at Graha Mandidi, Floor 17, Jl. Imam Bonjol No.61, Menteng, Central Jakarta 10310 Indonesia.

5. On information and belief, Jin Maa is limited liability corporation organized and existing under the laws of Hong Kong with its principal place of business located at No. 5, 17/F, Strand 50, 50 Bonham Strand, Sheung Wan, Hong Kong.

6. On information and belief, Jin Maa and Aurora are agents of each other, alter egos or general partners, sharing ownership, confidential information, and operations, and responsible for each others' debts. On information and belief, Jin Maa and Aurora have acted or purported to act on each other's behalf, for each other's benefit, and as each other's agent; and each has exercised, or should have been exercising, control over the other's activities.

JURISDICTION AND VENUE

7. Aurora and Jin Maa have invoked the jurisdiction and venue of this Court by filing their Complaint arising out of the same subject matter as USARM's Counterclaim. Venue is proper at least based on the act of filing this action.

8. In addition, this Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between USARM, Aurora, and Jin Maa, and the amount in controversy exceeds $75,000 (not including interest and costs).

9. This Court also has jurisdiction over Aurora because it "irrevocably and exclusively submit[ed] to the jurisdiction and venue of the state and federal courts sitting in New

York, New York" in its contract with USARM.

## **FACTUAL BACKGROUND**

10. USARM is an import-export company, based in Virginia but coordinating logistics and trade around the world.

11. In spring of 2020, with the spike of the coronavirus in the United States, USARM decided to enter the Personal Protective Equipment import market, including sales of masks and gloves to medical centers.

12. In particular, on April 5, 2020, USARM entered into an agreement to purchase certain masks from Jin Maa for sale to a potential purchaser.

13. That end-sale fell through, and the Jin Maa contract was never consummated—Aurora sent no money, Jin Maa sent no masks.

14. USARM entered into an agreement with W4Group LLC, for the benefit of eventual purchaser Sigma Supply of North America, Inc. (the "Sigma Agreement") to ship ten million vinyl gloves, fit to certain specifications, to arrive at Boston Logan Airport by May 19, 2020.

15. To meet that order, USARM sourced suppliers around the world, ultimately landing upon Aurora.

16. Aurora told USARM that it could provide the necessary gloves out of existing or readily accessible inventory, meeting all necessary specifications, at a price of $740,000.

17. Aurora specifically represented that it owned airplanes which it would use to deliver the gloves.

18. Based on these representations, on May 14, 2020, USARM entered into an agreement (the "Aurora Agreement"), drafted by Aurora, to buy the gloves from Aurora.

19. The Aurora Agreement provides that the "Supplier shall indemnify and hold the Buyer . . . harmless from and against any and all liability, loss or damage, cost or expense (including court costs and reasonable attorneys' fees), of whatever nature and by whomever asserted, arising out of, resulting from or in any way connected with (1) a breach of Supplier's obligations under this agreement, including but not limited to, a breach of the Supplier's representations, warranties, or covenants set forth in this Agreement, or for injuries . . . or other economic damages resulting from the Supplier's or its agents' negligence of willful misconduct." Aurora Agreement, ¶ 9(a).

20. The Aurora Agreement includes an express "warranty that the products are delivered in accordance with the specification therefor supplier or agreed to by the Buyer." Aurora Agreement, ¶ 10(a).

21. As soon as the Aurora Agreement was signed, Aurora started telling USARM's principal about difficulties it was ostensibly encountering with performance.

22. For example, Aurora claimed that it could not, after all, locate masks of the correct sizes—Extra Large and Large—but that its Medium gloves were plenty big enough.

23. Aurora also came to explain that actually, it had no planes, and would need to pay for shipping.

24. Aurora also came to explain that the procurement and shipment of the gloves would be delayed by national and religious holidays in Indonesia, though the timing of those holidays was, of course, known well in advance of the negotiation of the Aurora Agreement.

25. At the same time, the buyers under the Sigma Agreement were pushing on USARM to deliver on time and according to specifications.

26. The rock and hard place between which Aurora found itself met on or about May

29, 2020, when, in the middle of the night, USARM's principal received a phone call from Aurora's principal, Alexander Ivanov, who told USARM's principal that he was on the way to the airport, but would not release the shipment for export unless USARM signed an addendum to the Aurora Agreement ostensibly taking upon itself the cost of shipment.

27. Pressed to make an instantaneous decision on which the performance of two multi-million-dollar contracts appeared to hinge, USARM's principal gave in to Ivanov's demands and signed the addendum.

28. Despite that, Aurora failed to send USARM the gloves it was obligated to provide under the Aurora Agreement.

29. Instead, Aurora sent USARM a small partial shipment, to the wrong airport, of gloves that were the wrong size and inferior quantity.

30. The buyer under the Sigma Agreement rejected the gloves outright.

31. When USARM pressed Aurora to complete delivery, Ivanov flew into a rage, yelling, hanging up the phone, and refusing to communicate further.

32. To date, despite having received full payment from USARM, Aurora has failed to deliver any gloves that meet the specifications under the Aurora Agreement.

33. Instead, Aurora has asserted a bogus claim against USARM for shipping costs for the rejected gloves, and has, through its alter ego or partner Jin Maa, asserted a claim for payment under an unenforceable penalty clause in the unconsummated agreement with Jin Maa.

34. Meanwhile, the buyer under the Sigma Agreement has brought a claim against USARM in the Circuit Court of Garland County, Arkansas, seeking $849,535 plus interest, attorneys' fees, court costs, and punitive damages to twice the amount of compensatory damages based on USARM's failure to deliver the gloves Aurora was supposed to sell it.

**BREACH OF CONTRACT**

35. USARM incorporates by reference the allegations in paragraphs 1-34 of its Counterclaims as though fully set forth herein.

36. Aurora executed a written Agreement with USARM to provide ten million vinyl gloves in accordance with specifications provided by USARM.

37. USARM fully performed its obligations under the Aurora Agreement, including by paying the full purchase price agreed to in the Aurora Agreement.

38. Aurora breached the Aurora Agreement by failing to provide ten million gloves of the requisite specification.

39. As a result of that breach, USARM was unable to perform under the Sigma Agreement.

40. Aurora knew about the Sigma Agreement, and knew that its failure to perform would prevent USARM from performing.

41. As a result of Aurora's breach, USARM has been damaged in an amount to be determined at trial, consisting of, at least (i) its payment to Aurora; (ii) any amount it ultimately pays to the buyer under the Sigma Agreement; (iii) its costs and reasonable attorneys' fees in defending the Sigma Litigation; and (iv) its costs and reasonable attorneys' fees in defending this litigation and asserting this counterclaim.

42. As a principal, alter-ego, or partner of USARM, Jin Maa is liable to USARM to the full extent that Aurora is liable to USARM.

43. WHEREFORE, defendant USARM Group, LLC demands judgment in its favor and against plaintiffs PT Aurora Indonesia Trading and Jin Maa Trading Limited (i) dismissing the Complaint, (ii) awarding it the costs, fees and disbursements associated with the defense of

the action, (iii) awarding it judgment against counterclaim defendants in the amount to be proven at trial, plus interest, attorneys' fees and costs, and (iv) granting such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

USARM demands a trial by jury of all issues so triable.

Dated: November 16, 2020

                                        Respectfully submitted,

                                        OFFIT KURMAN, P.A.

                                        By: /s/Alexander Mirkin
                                             Ted G. Semaya
                                             Charles J. Nerko
                                             Alexander Mirkin
                                        590 Madison Avenue, 6th Floor
                                        New York, NY 10022
                                        Tel: (212) 545-1900
                                        Fax: (212) 545-1656
                                        tsemaya@offitkurman.com
                                        charles.nerko@offitkurman.com
                                        amirkin@offitkurman.com

                                        *Attorneys for Defendant*
                                        *USARM Group, LLC*