**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PT AURORA INDONESIA TRADING and JIN MAA TRADING LIMITED, | ECF Case |
| Plaintiffs, | |
| v. | Civil Case No. 20 Civ. 07045 (ER)(JLC) |
| USARM GROUP, LLC, | |
| Defendant. | |

**PLAINTIFFS' FIRST SET OF DEMANDS FOR**
**THE PRODUCTION TO DEFENDANT**

To:  Alexander Mirken, Esq.
     OFFIT KURMAN, P.A.
     590 Madison Avenue, 6th Floor
     New York, NY 10022
     Tel: (212) 545-1900
     Fax: (212) 545-1656
     amirkin@offitkurman.com

     *Attorneys for Defendant USARM Group, LLC*

     Pursuant to F.R.C.P. 34, Plaintiffs PT Aurora Indonesia Trading and Jin Maa Trading

Limited (collectively, "Plaintiffs") request that Defendant USARM Group, LLC ("Defendant")

produce and permit Plaintiffs, or Plaintiffs' agent, to inspect and copy the following designated

documents.  These requests are deemed to be continuing so as to require supplemental

documents immediately upon the discovery of any documents sought herein.

     Dated: December 22, 2020

                                        THE SCHUTZER GROUP, PLLC

                                        By: *s/ Eric P. Schutzer*_____

Eric P. Schutzer, Esq.
330 Seventh Avenue, 15th Floor
New York, NY 10001
Tel:. (212) 714-0700
Fax: (212) 714-0703
ericschutzer@theschutzergroup.com

*Attorneys for Plaintiffs*

DEFINITIONS

A.      "Plaintiffs," means individually and/or collectively PT Aurora Indonesia Trading ("Aurora") and Jin Maa Trading Limited ("Jin Maa"), including any present or former agents, officers, directors, representatives, or employees.

B.      "Defendant" means USARM Group, LLC ("USARM"), including any present or former agents, officers, directors, members, representatives, or employees.

C.      "Defendant" "you" and "yours" refers collectively to USARM, including any present or former agents, officers, directors, members, representatives, or employees.

D.       "Communication" means every manner of transmitting and receiving facts, information, opinions and thoughts, whether orally, by document, writing, or copy thereof, or otherwise.

E.      "Verified Complaint" means the Verified Complaint in this action.

F.      "Affirmative Defenses" shall mean the Affirmative Defenses made by Defendant in Defendant's Amended Verified Answer in this action (ECF # 16),

G.      "Counterclaim" shall mean the Counterclaim asserted by Defendant in Defendant's Amended Verified Answer in this action (ECF # 16).

H.      "Document" is to be interpreted in the broadest and most inclusive sense and shall mean and include, but not be limited to, the following items, whether written, printed, typed, recorded,

however produced or reproduced, whether by hand or by mechanical, electronic or other means, whether filed or stored in any computer system or data storage or retrieval system, whether sent or received or neither, and including all originals, masters, drafts and any additional copies bearing notations or marks, namely: all memoranda, reports, financial reports, notes, transcripts, letters, envelopes, telegrams, cables, telex messages, correspondence or memoranda of correspondence, including intracompany and intra party correspondence or telegrams, reports, summaries, minutes, transcripts or records of telephone conversations or interviews, tabulations, studies, analyses, evaluations, projections, work papers, statements, accountants' work papers, summaries, opinions, statistical records, journals, desk calendars, appointment books, dairies, financial records, lists, comparisons, questionnaires, surveys, charts, graphs, bulletins, notices, instructions, manuals, guarantees or warranties, agreements, reports or summaries of investigations, opinions or reports of experts or consultants, public announcements, press releases, contracts, agreements, banking records, business records, sales records, royalty statements, manufacturing reports, powers of attorney or letters of consent, books of account, statements, bills, checks, or any other information containing paper, writing or physical thing.

I.    "Concerning" means relating to, referring to, describing, evidencing, or constituting.

J.    "Person" shall refer to a natural person, partnership, corporation, incorporated association, joint venture, or any governmental or other legal entity.

K.    "Identify", "identification", or "identity" shall mean to provide the following information:

   (1)    When used with reference to a natural person, state his or her full name and present or last-known business and residential address, his or her last-known or present

business affiliation, and his or her position and business affiliation at the time of the

transaction, occurrence, event, happening, or matter in question;

(2)     When used with reference to any entity other than a natural person (e.g.,

corporation, partnership, joint venture, or association) state:

    (a)  its full name;

    (b)  the address of its principal place of business; and

    (c)  its organization form and its purposes, primary business, or activities;

(3)     When used with reference to an oral or written communication:

    (a)   state the place at which the date on which such oral or written

    communication occurred;

    (b)   identify each person making such oral or written communication, the person

    to whom it was made, and each other person who was present (in person or by

    telephone) when it was made;

    (c)   state the subject and the substance of such oral or written communication;

    and

    (d)   identify any document that relates or refers to each such communication or

    that was prepared or made during the course thereof or a consequence thereof.

L.     Each reference to any party or corporate entity shall mean and include that party or

corporate entity and all directors, officers, employees, attorneys, agents, representatives, and all

persons acting or purporting to act on its behalf.

M.     The connective "and" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of this document request all responses that might otherwise

be construed to be outside of its scope.

N.      The use of the singular form of any word includes the plural and vice versa.

O.      All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

PLEASE TAKE FURTHER NOTICE, that your response shall be to each individual item or category of items as is set forth herein.

(1)     Demand for the names and addresses of all witnesses;

(2)     Demand for the discovery and inspection of any statement of a party represented by the undersigned;

(3)     Demand for expert witness disclosure; and

(4)     Demand for documents.

1.   DEMAND FOR THE NAMES AND ADDRESSES OF WITNESSES

PLEASE TAKE NOTICE, that the undersigned hereby demands, that you set forth, in writing and under oath, the name(s) and address(es) of each person claimed by any party you represent to be a witness to any of the following:

(a)     Any person(s) having knowledge of any act, payment, or other condition or occurrence relative to the Defendant's Defenses herein;

(b)     If any of the person(s) named in response to the preceding subparagraphs were in the employ of or a party to any contract of any party to this action during the time period set forth in the complaint, set forth the names(s) of such persons(s).

(c)     If any of the person(s) named in the response to the preceding subparagraphs are presently in the employ of or a party to any contract of any party to this action, set forth the name(s) of such person(s).

(d)     If no such witnesses are known to the Defendant, so state in the sworn reply to

this demand. The undersigned will object upon trial to the testimony of any

witness(es) not so identified.

2.   DEMAND FOR DISCOVERY AND INSPECTION OF ANY STATEMENT OF A PARTY
REPRESENTED BY THE UNDERSIGNED

PLEASE TAKE FURTHER NOTICE, that the undersigned hereby demands that you

produce to the undersign, a copy of each and every statement signed or unsigned, or any

recorded statement made by or taken from each party adverse by Plaintiff, its agents, servants or

employees now in your possession, custody or control, or in possession, custody, control of any

party you represent in this action, if such statement in any manner bears on the issues of this

action.

3.   DEMAND FOR EXPERT WITNESS DISCLOSURE

PLEASE TAKE FURTHER NOTICE, that you are hereby required to set forth the

following:

(a)     The name and address of each and every person you expect to call as an expert

witness at the trial of this action;

(b)     In reasonable detail, the subject matter on which each expert is expected to testify;

(c)     The substance of the facts and opinions on which each expert is expected to

testify;

(d)     The qualification of each expert witness; and

(e)     A summary of the grounds for each expert's opinion.

4.   DEMAND FOR DOCUMENTS

(i)     For the purpose of this Document Request, production of a copy, rather than an original,

of a document is acceptable provided that the copy is a complete, accurate, legible and an

unaltered reproduction of the original and that the original is made available for inspection and

photocopying at a time and place mutually agreed upon by the attorneys for the parties.

(ii)     The documents requested shall be organized and labeled to correspond with the

categories is this request.

(iii)    The file folder or other contained in which a document is kept is deemed to be an integral

part of the document and shall be produced with the document.

(iv)     If there are no documents responsive to a category in this request, state so in writing.

(v)      If any document called for by this request are withheld under a claim of privilege, furnish

a list setting forth for each such documents: (a) the nature of the privilege (including attorney

work product) that is being claimed; (b) the type of document; (c) the general subject matter of

the document; (d) the date of the documents; and (e) such other information as is sufficient to

identify the document for a subpoena duces tecum, including, where appropriate, the author of

the document, the addressee of the document, and where not apparent, the relationship of the

author and addressee to each other.

(vi)     If any document requested was, but is no longer in Defendant's possession, custody, or

control, state the subject matter of the document, what disposition was made of it, and the date or

dates on which such disposition was made. Additionally, produce all documents relating to the

disposition of such document or documents.

(vii)    If Defendant is unable to locate any document requested, state all efforts that have been

made to locate it and identify any individual who he/she believes is likely to possess any

information regarding the document's whereabouts.

(viii)   This document request shall be deemed continuing to the fullest extent permitted under

law, and to the extent that any documents requested herein are not available at the time

Defendant responds, Defendant shall promptly supplement its response when such documents become available.

(ix)     If any document contains handwritten notes, furnish a list identifying for each such document, the author of the handwritten notes.

(x)     If answering this document request, furnish all information that is available to you, including information that is in the possession of any of your present agents, employees, or attorneys, your former agents, employees, or attorneys, or otherwise subject to your custody and control.

(xi)     This document request is of a continuing nature. If, after the date and time for document production as set forth above or as otherwise agreed upon, additional documents responsive to this request come within the possession, custody or control of the Defendant, such additional documents shall be produced by the Defendant or his attorneys, at such time and place to be mutually agreed upon by the attorneys for the parties, but not later than twenty (20) days after the additional documents come within their possession, custody or control.

(xii)     Defendant shall produce the documents requested as they are kept in the regular course of business and shall organize and label them to correspond to the categories and numbers in the request.

(xiii)     If there is any objection to any request or part thereof based on an asserted privilege, identify each document or portion thereof to which the objection is made, together with the following information:

      a.     Each author or maker of the document;

      b.     Each addressee or recipient of the document and each other person to whom the document's content were shown or explained;

      c.        The date of the document;

      d.        The title or description of the general nature of the subject matter of the document and the number of pages;

      e.        The present location of the document;

      f.        Each person who has custody, possession or control of the document; and

      g.        The basis of the objection.

(xiv)   If the documents responsive to the following requests have been destroyed or discarded, identify the document, and also state:

      a.        The date of the document;

      b.        The author or maker of the document;

      c.        The person to whom and from whom the document was sent;

      d.        The subject matter of the document;

      e.        The date on which the document was destroyed or discarded;

      f.        The reason for the destruction or discard; and

      g.        The person authorizing and/or carrying out said destruction or discard.

(xv)   Except as otherwise indicated, the time period covered by these requests is January 1, 2020, to the time of your response.

## DOCUMENTS AND INFORMATION REQUESTED

1.     Each and every Document relating to agreements, contracts, supplementary agreements, and accord and/or satisfactions made between Plaintiffs and Defendant relating to the sale of vinyl examination gloves, surgical masks, and related items (collectively, the "Goods").

2.      Each and every Document relating to agreements, contracts, supplementary agreements, and accord and/or satisfactions made between Defendant and any third parties relating to the Goods.

3.      Each and every Document relating to and/or representing communications made between Defendant and Plaintiff.

4.      Each and every Document relating to and/or representing communications made between Defendant and any third parties relating to the Goods.

5.      Each and every Document which represents demands for payment received by Defendant from Plaintiff.

6.      Each and every Document which represents demands for payment made by Defendant to third parties relating to the Goods.

7.      Each and every canceled check, receipt, and/or bank statement reflecting payments made by Defendant to Plaintiffs.

8.      Each and every check, receipt, and/or bank statement reflecting payments made by to Defendant by any third parties relating to the Goods.

9.      Each and every correspondence, memorandum, and/or communications made between Plaintiffs and Defendant, with regard to payments made or the alleged outstanding debt.

10.     Each and every Document evidencing any dispute by Defendant with regard to the amount alleged to be owed to Plaintiffs.

11.     Each and every invoice, statement, or bill received by Defendant relating to the Goods.

12.     Each and every Document evidencing any complaints made by Defendant to Plaintiffs relating to the Goods.

13.     Each and every Document evidencing Defendant's sale of the Goods.

14.     Each and every Document evidencing the current location of the Goods Plaintiff delivered to Defendant.

15.     Each and every Document evidencing the manner of storage and handling of the Goods still in Defendant's possession.

16.     Each and every document supporting or otherwise concerning Defendant's First Affirmative Defense that the Verified Complaint fails to state a cause of action.

17.     Each and every document supporting or otherwise concerning the allegations of Defendant's Second Affirmative Defense that Plaintiffs' contracts and addenda were procured by duress and are unconscionable, illegal, and contrary to public policy.

18.     Each and every document supporting or otherwise concerning the allegations of Defendant's Second Affirmative Defense that Plaintiffs unfairly and unlawfully exploited Defendant's need to procure Personal Protective Equipment during the COVID-19 pandemic.

19.     Each and every document supporting or otherwise concerning the allegations of Defendant's Second Affirmative Defense that Plaintiffs engaged in unlawful price gouging.

20.      Each and every document supporting or otherwise concerning the allegations of Defendant's Second Affirmative Defense that Plaintiffs forced Defendant to sign an Addendum.

21.     Each and every document supporting or otherwise concerning the allegations of Defendant's Second Affirmative Defense that Plaintiffs threaten to withhold the supplies that Plaintiffs were under a preexisting duty to provide.

22.     Each and every document supporting or otherwise concerning the allegation of Defendant's Third  Affirmative Defense that Plaintiffs knew or should have known of Defendant's actions, but Plaintiffs unreasonably delayed efforts to enforce their rights, if any,

causing significant prejudice to Defendant and others (such Defendant's own purchasers) and substantial changes to their positions.

23.     Each and every document supporting or otherwise concerning the allegation of Defendant's Third  Affirmative Defense that Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel (whether equitable, promissory, or otherwise), consent, reliance, laches, and acquiescence.

24.     Each and every document supporting or otherwise concerning Defendant's Fourth Affirmative Defense that Defendant is entitled to set off or recoup damages, including by the damages Plaintiffs owe Defendant on account of any counterclaim.

25.     Each and every document supporting or otherwise concerning Defendant's Fifth Affirmative Defense that Plaintiffs failed to mitigate, minimize, or avoid their damages.

26.     Each and every document supporting or otherwise concerning the allegations of Defendant's Sixth Affirmative Defense that Plaintiffs have not been damaged or harmed, and Defendant has not been benefited, by reason of any act or omission alleged against Defendant; and because the alleged injury or damage suffered by Plaintiffs is nonexistent, is speculative, lacks specificity, is not of the nature or to the extent alleged, is not recoverable for the claims asserted, or was not the foreseeable result of Defendant's alleged conduct.

27.     Each and every document supporting or otherwise concerning the allegations of Defendant's Sixth Affirmative Defense that to the extent Defendant harmed Plaintiffs, any such harm was de minimis and therefore not actionable.

28.     Each and every document supporting or otherwise concerning Defendant's Seventh Affirmative Defense that Plaintiffs' contracts, addenda, or portions thereof, are unenforceable.

29.     Each and every document supporting or otherwise concerning Defendant's Eighth Affirmative Defense that Plaintiffs engaged in immoral, unconscionable, or inequitable conduct related to the subject matter of this action that injured Defendant.

30.     Each and every document supporting or otherwise concerning Defendant's Ninth Affirmative Defense that Plaintiff's claims are barred by the doctrine of in pari delicto because Plaintiffs have engaged in culpable wrongdoing barring them from bringing claims against Defendant.

31.     Each and every document supporting or otherwise concerning the allegations of paragraph 1 of the Counterclaim that Aurora presented itself as a supplier with a ready inventory of gloves of the necessary quality and size, private airplanes that would accommodate the extremely demanding delivery schedule of delivering these emergency supplies, and price demands that would make the contemplated transaction realistic, even profitable, for USARM.

32.     Each and every document supporting or otherwise concerning the allegations of paragraph 1 of the Counterclaim that once the parties' agreement was signed, Aurora proved itself to be worse than unreliable and exploitative.

33.     Each and every document supporting or otherwise concerning the allegations of paragraph 2 of the Counterclaim that Aurora turned out not to have the necessary gloves in inventory, and was unable to source them—by its own admissions, only 26% of the scheduled deliveries were made, and those were so inferior in quality and incorrect in size as to be rejected *in toto* by the end buyer.

34.     Each and every document supporting or otherwise concerning the allegations of paragraph 2 of the Counterclaim that the deliveries were woefully late.

35.     Each and every document supporting or otherwise concerning the allegations of paragraph 2 of the Counterclaim that Aurora has disavowed any intention of ever performing under the parties' agreement.

36.     Each and every document supporting or otherwise concerning the allegations of paragraph 6 of the Counterclaim.

37.     Each and every document supporting or otherwise concerning the allegations of paragraph 12 of the Counterclaim that on April 5, 2020, USARM entered into an agreement to purchase certain masks from Jin Maa for sale to a potential purchaser.

38.     Each and every document supporting or otherwise concerning the allegations of paragraph 13 of the Counterclaim that the Jin Maa contract was never consummated.

39.     Each and every document supporting or otherwise concerning the allegations of paragraph 14 of the Counterclaim that USARM entered into an agreement with W4Group LLC, for the benefit of eventual purchaser Sigma Supply of North America, Inc.

40.     Each and every document supporting or otherwise concerning the allegations of paragraph 15 of the Counterclaim that USARM sourced suppliers around the world.

41.     Each and every document supporting or otherwise concerning the allegations of paragraph 16 of the Counterclaim that Aurora told USARM that it could provide the necessary gloves out of existing or readily accessible inventory, meeting all necessary specifications, at a price of $740,000.

42.     Each and every document supporting or otherwise concerning the allegations of paragraph 17 of the Counterclaim that Aurora specifically represented that it owned airplanes which it would use to deliver the gloves.

43.     Each and every document supporting or otherwise concerning the allegations of paragraph 18 of the Counterclaim that USARM entered into an agreement with Aurora on May 14, 2020 based upon representations made by Aurora regarding ownership of airplanes.

44.     Each and every document supporting or otherwise concerning the allegations of paragraph 21 of the Counterclaim that as soon as the agreement with Aurora was signed, Aurora started telling USARM's principal about difficulties it was ostensibly encountering with performance.

45.     Each and every document supporting or otherwise concerning the allegations of paragraph 22 of the Counterclaim that Aurora claimed that it could not, after all, locate gloves of the correct sizes—Extra Large and Large—but that its Small gloves were plenty big enough

46.     Each and every document supporting or otherwise concerning the allegations of paragraph 23 of the Counterclaim that Aurora explained that it had no planes and would need to pay for shipping.

47.     Each and every document supporting or otherwise concerning the allegations of paragraph 24 of the Counterclaim that Aurora came to explain that the procurement and shipment of the gloves would be delayed by national and religious holidays in Indonesia.

48.     Each and every document supporting or otherwise concerning the allegations of paragraph 25 of the Counterclaim.

49.     Each and every document supporting or otherwise concerning the allegations of paragraph 26 of the Counterclaim that on or about May 29, 2020, in the middle of the night, USARM's principal received a phone call from Aurora's principal, Alexander Ivanov, who told USARM's principal that he was on the way to the airport, but would not release the shipment for

export unless USARM signed an addendum to the Aurora Agreement ostensibly taking upon itself the cost of shipment.

50.     Each and every document supporting or otherwise concerning the allegations of paragraph 27 of the Counterclaim that USARM's principal was pressed to make an instantaneous decision.

51.     Each and every document supporting or otherwise concerning the allegations of paragraph 28 of the Counterclaim that Aurora failed to send USARM the gloves it was obligated to provide under the Aurora Agreement.

52.     Each and every document supporting or otherwise concerning the allegations of paragraph 29 of the Counterclaim that Aurora sent USARM a small partial shipment, to the wrong airport, of gloves that were the wrong size and inferior quantity.

53.     Each and every document supporting or otherwise concerning the allegations of paragraph 30 of the Counterclaim that the buyer under the Sigma Agreement rejected the gloves outright.

54.     Each and every document supporting or otherwise concerning the allegations of paragraph 32 of the Counterclaim that Aurora has received full payment from USARM.

55.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 32 of the Counterclaim that Aurora has failed to deliver any gloves that meet the specifications under the Aurora Agreement.

56.     Each and every pleading and document produced by any party relating to the lawsuit filed against USARM in the Circuit Court of Garland County, Arkansas, based on USARM's failure to deliver the gloves.

57.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 37 of the Counterclaim that USARM fully performed its obligations under the Aurora Agreement, including by paying the full purchase price agreed to in the Aurora Agreement.

58.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 38 of the Counterclaim that Aurora breached the Aurora Agreement.

59.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 39 of the Counterclaim that USARM was unable to perform under the Sigma Agreement because of Aurora's alleged breach.

60.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 40 of the Counterclaim that Aurora knew about the Sigma Agreement, and knew that its failure to perform would prevent USARM from performing.

61.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 41 of the Counterclaim that USARM has been damaged because of Aurora's alleged breach.

62.     Each and every document supporting or otherwise concerning the allegations contained in paragraph 42 of the Counterclaim that Jin Maa is liable to USARM to the full extent that Aurora is liable to USARM.

63.     Any photographs of the Goods.

64.     Any and all documents upon which Defendants will rely upon at trial.

65.     Any and all Documents supporting Defendants' affirmative defenses.

Any and all Documents supporting the Counterclaims.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel via the Court's ECF system.

THE SCHUTZER GROUP, PLLC

By: *s/ Eric P. Schutzer*_____
    Eric P. Schutzer, Esq.
330 Seventh Avenue, 15th Floor
New York, NY 10001
Tel. (212) 714-0700